10-3212.121-RSK                                                    Oct. 18, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNIVERSAL BEAUTY PRODUCTS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 3212 |
| | ) | |
| MORNING GLORY PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the court is the defendant's motion to transfer venue.
For the reasons explained below, we deny the defendant's motion.

**BACKGROUND**

Universal Beauty Products, Inc. ("Universal") is an Illinois
corporation in the business of manufacturing hair-care products.
(Am. Compl. ¶ 1.) Defendant Morning Glory Products, Inc. ("Morning
Glory") — a North Carolina corporation based in Greenville, North
Carolina — is a competitor of Universal. (Id. at ¶ 2.) Universal
accuses Morning Glory of marketing and advertising its "Gro-Protect
Solutions" hair-care product as patented, when in fact it is not.
(See id. at ¶¶ 10-11 (alleging that Morning Glory's patent
application is pending).) It has sued Morning Glory under the
Patent Act for false marking, a claim that requires it to prove
that: (1) Morning Glory falsely claimed that its product was
patented "for the purpose of deceiving the public;" and (2)

- 2 -

Universal "suffered a competitive injury" as a result. See 35 U.S.C. § 292(a) and (b). In support of its claim for damages, Universal alleges that it spent substantial time and money attempting to develop products that would not infringe Morning Glory's purported patent. (Am. Compl. ¶¶ 13-15, 19.)

## DISCUSSION

Morning Glory has moved to transfer this case to the Eastern District of North Carolina, where its office is located. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). We may transfer this action if (1) venue is proper in both this court and in the Eastern District of North Carolina; (2) the Eastern District of North Carolina is more convenient for the parties and witnesses; and (3) transfer would serve the interests of justice. See Abbott Labs. v. Selfcare, Inc., No. 98 C 7102, 1999 WL 162805, at *1 (N.D. Ill. Mar. 15, 1999) (Grady, J.). "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir. 1986); see also In re National Presto Industries, Inc., 347 F.3d 662, 664 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum

- 3 -

should rarely be disturbed.") (citation and internal quotation marks omitted).

The parties do not dispute that venue is proper both here and in the Eastern District of North Carolina, so we will confine our discussion to the second and third factors.

**A.    Convenience Factors**

To evaluate the convenience of one forum over another, we consider five factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of witnesses; and (5) the convenience of the parties. Abbott Labs., 1999 WL 162805, at *3.

**1.    The Plaintiff's Choice of Forum.**

The general rule is that the plaintiff's choice of forum is given "substantial weight, particularly when it is the plaintiff's home forum." Amorose v. C.H. Robinson Worldwide, Inc., 521 F.Supp.2d 731, 735 (N.D. Ill. 2007). Prior to a recent amendment to the false-marking statute, courts in this district consistently held that the general rule did not apply to plaintiffs in false marking cases. See, e.g., Simonian v. Maybelline, LLC, No. 10 C 1615, 2011 WL 814988, *6 (N.D. Ill. Mar. 1, 2011); Zojo Solutions, Inc. v. Leviton Manufacturing Co., Inc., No. 10 C 881, 2010 WL 4257546, *1 (N.D. Ill. Oct. 20, 2010) (Grady, J.); Simonian v. Monster Cable Prods., Inc., 821 F.Supp.2d 996, 998 (N.D. Ill. 2010). The statute in effect when these cases were decided

- 4 -

authorized plaintiffs to file *qui tam* actions to recover a civil penalty that they were entitled to share with the federal government. See 35 U.S.C. § 292 (b) ("Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.") (*effective to* September 15, 2011). Courts considering § 1404(a) motions in such cases — including this court in Zojo — reasoned that the plaintiff's forum choice was entitled to less deference because the federal government was the real party in interest, not the plaintiff. See Monster Cable, 821 F.Supp.2d at 998 ("[T]he plaintiff in a *qui tam* action is actually the federal government, not Simonian. Therefore, contrary to Simonian's suggestion otherwise, his choice of venue is not entitled to substantial deference."); see also Zojo, 2010 WL 4257546, *1 ("In a *qui tam* action, the plaintiff/relator's choice of forum is entitled to little weight."). Congress has since abolished *qui tam* suits in false-marking cases. See U.S. ex rel. Heathcote Holdings Corp., Inc. v. Suncast Corp., No. 11 C 1010, 2012 WL 3042898, *1 (N.D. Ill. July 25, 2012) ("Among other things, the [Leahy-Smith America Invents Act] fundamentally altered the § 292 enforcement regime by eliminating *qui tam* actions. ); see also 35 U.S.C. § 292(a) ("Only the United States may sue for the penalty authorized by this subsection."). Universal alleges that it has suffered a "competitive injury as a result" of Morning Glory's false-marking

- 5 -

and it is suing on its own behalf to recover damages for that injury. See 35 U.S.C. § 292(b). Accordingly, it "is entitled to the same deference to [its] choice of forum as would be afforded to any civil plaintiff." West v. Quality Gold, Inc., No. 5:11-cv-02531-EJD, 2012 WL 1067558, *3 (N.D. Cal. Mar. 28, 2012).

Morning Glory implicitly acknowledges the amendment's impact by emphasizing that in many *qui tam* suits the courts also ruled that the plaintiff's choice was entitled to less deference because the claims had little connection to the chosen forum. See, e.g., Hunter Fan, 2010 WL 3975564, *2 ("If the forum does not have a significant relationship to the material events leading to the litigation, courts afford the plaintiff's choice less deference."). Instead, these courts concluded that the lawsuits were centered in the location where the defendant made the decision to market its product as "patented," typically the defendant's home forum. See id. (holding that liability "hinge[d]" where the defendant made the decision to mark its product as patented with the alleged intent to deceive the public); see also Maybelline, 2011 WL 814988, *7; Monster Cable, 821 F.Supp.2d at 998; Zojo, 2010 WL 4257546, *2. In this case, Universal does not contest Morning Glory's assertion that it made the relevant decisions in Greenville, North Carolina, where its office is located. However, we do not believe that this concession weighs as heavily in the balance as it would have before Congress amended the false-marking statute. The plaintiffs in the

*qui tam* suits were not required to prove that they were injured to recover a share of the penalty that the statute imposed. See <u>Zojo</u>, 2010 WL 4257546, *2. Consequently, the cases had little connection to the plaintiff's home forum. By contrast, in this case this district has a "significant relationship to the material events leading to the litigation . . . ." <u>Hunter Fan</u>, 2010 WL 3975564, *2. Universal is claiming substantial damages stemming from its alleged research and development in Illinois in response to Morning Glory's false claim that its "Gro-Protect" product was patented. We fully expect that Universal's actions in Illinois will be a major focus of this case. (<u>See</u> Answer ¶ 17 ("Any alleged delay by Universal in entering the market was caused by Universal's failure to conduct a reasonable patent search and failure to conduct adequate due diligence."); <u>see also</u> <u>id.</u> at ¶ 19 ("Morning Glory denies that it has caused Universal any financial harm, and specifically denies that Universal acted reasonably upon discovering that the GRO-PROTECT SOLUTIONS product was marked with the word "Patented.").)

In sum, we conclude that Universal's choice to sue in its home forum is entitled to substantial weight.

### 2. The Situs of Material Events

As we just discussed, Universal does not contest Morning Glory's argument that it decided in North Carolina to market its product as patented. And we tend to agree with Morning Glory that

this decision is the focal point of liability in this case.[1]  But Universal is claiming substantial damages based upon its alleged conduct in Illinois in response to Morning Glory's false marking. On this record, and at this stage of the case, we cannot say whether the events that occurred in one forum predominate over the events that occurred in the other.  We conclude that this factor is neutral.

3.    **Relative Ease of Access to Proof**

Again, there is likely to be material evidence in both Illinois (competitive injury) and North Carolina (intent to deceive).  At this stage of the case, we cannot confidently predict where the bulk of the relevant evidence is located.  We conclude that this factor is also neutral.

4.    **Convenience of the Witnesses**

Universal has identified four potential witnesses residing in Illinois: (1) Barry Williams (Universal's Chief Scientist); (2) Yong Park (its President); (3) Yong C. Ki (its Vice President – Manufacturing & Finance); and (4) an unidentified CPA from the company's outside accounting firm.  (Pl.'s Resp. at 5.)  Morning Glory has also identified four potential witnesses, each residing in North Carolina: (1) Calvin Lee Garris (Morning Glory's President

---

[1]    Morning Glory dismisses Universal's argument that the history of its patent application, which is a public record not tied to any particular location, will be relevant to liability. (See Def.'s Reply at 7 n.2) We think that it may be relevant, but it will most likely play a role in conjunction with evidence of the defendant's decision-making process in North Carolina.

- 8 -

and CEO); (2) Tula Garris (its Vice President); (3) an unidentified third-party graphic designer with knowledge of the company's packaging decisions; and (4) an unidentified third-party web developer with knowledge of the company's website. (See Garris Decl. ¶ 10.) First, the convenience of the parties' employees is not a major consideration. See, e.g., Hunter Fan, 2010 WL 3975564, *3 ("The convenience of witnesses who are within a party's control is far less important than the convenience of non-party witnesses."). With respect to the third-party witnesses, Universal has not even generally described the nature of the testimony that its outside accountant is expected to provide. Presumably he would address Universal's alleged damages, but it is unclear why Universal could not elicit the same evidence from a knowledgeable employee. For its part, Universal argues that Morning Glory's third-party witnesses are unlikely to provide relevant or material testimony. (See Pl.'s Resp. at 4-5.) We assume that Morning Glory's decision to label its product "patented," and to identify it as such on its website, was communicated in some way to these witnesses. The substance of those communications may be relevant to the question of Morning Glory's intent. However, Morning Glory has not articulated its theory of the case except to say that it made an innocent mistake. So, it is difficult to assess how large

a role these witnesses are likely to play in this litigation.[2]
Moreover, we have no reason to suspect that they are "hostile or
reluctant witnesses." See Central States, Southeast and Southwest
Areas Pension Fund v. Salasnek Fisheries, Inc., 977 F.Supp. 888,
891 (N.D. Ill. 1997) ("Although the unavailability of compulsory
process is a potential problem, there is no indication that Mr.
Isom is a hostile or reluctant witness."). The fact that they are
outside of our subpoena power is a "potential problem" that may
never materialize. Id. We conclude that this factor weighs
slightly in favor of transfer.

### 5. Convenience of the Parties

Universal effectively concedes that it has greater resources
than Morning Glory and therefore it can more easily bear the burden
of litigating outside of its home forum. (See Pl.'s Resp. at 6.)
However, we will not require the defendant's employees to travel to
Illinois for deposition. If Universal wants live deposition
testimony, it will have to travel to North Carolina or make some
other arrangement that is convenient for those witnesses. It is
likely that Morning Glory's witnesses would have to attend trial in
Illinois, but civil trials are rare. There is a high probability
that the defendant's employees will never be required to travel to
Illinois in connection with this lawsuit. We conclude that the

---

[2] If Morning Glory contends that its false marking resulted from a
miscommunication with its vendors, then their testimony would be critical. If on
the other hand they merely carried out the defendants' instructions, then their
testimony would be less important.

- 10 -

parties' convenience weighs in favor of transfer, but again not strongly.

**B.    Public Interest Factors**

When examining the interest of justice, we focus on the efficient administration of the court system and consider the speed at which the case will proceed to trial, the courts' familiarity with the applicable law, and the desirability of resolving controversies in their locale.  See St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp., No. 05 C 5484, 2006 WL 1543275, at *1 (N.D. Ill. June 1, 2006).  The parties agree that the first two considerations are neutral: presumably the two courts are equally familiar with the relevant law and there does not appear to be any significant difference in the speed at which cases proceed to trial in the two districts.  With respect to the third consideration, Illinois has an interest "in providing an appropriate forum for [its] citizens to seek redress against out-of-state defendants . . ."  See Maybelline, 2011 WL 814988, *9.  North Carolina, too, is interested in resolving disputes involving its resident corporations.  See id.  Morning Glory insists that North Carolina is "closer" to the controversy because it is the situs of material events in this case.  (Def.'s Mem. at 11.)  We have already concluded that events material to this litigation occurred in both locations.  We conclude that the public interest factor is neutral.

- 11 -

C.   **Summary**

We conclude that the convenience of the witnesses and the parties supports transfer, but not strongly enough to override Universal's choice to sue Morning Glory in its home forum.

<u>**CONCLUSION**</u>

The defendant's motion to transfer venue [41] is denied.  A status hearing is set for October 24, 2012 at 10:30 a.m.


DATE:   October 18, 2012


ENTER:   _____

John F. Grady, United States District Judge